**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| v. | * | CRIMINAL NO. JKB-14-0423 |
| **RAFAEL CHIKVASHVILI,** | * | |
| **Defendant** | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

This matter came before the Court in a hearing on July 9 and 10, 2015. At issue were the following motions filed by Defendant Rafael Chikvashvili:

- Motion to Exclude Purported Expert Opinions Regarding "But For" Causation as to the Four Charged Deaths (ECF No. 44)

- Motion to Exclude Purported Expert Opinions (ECF No. 46)

- Motion to Bifurcate Trial (ECF No. 48)

- Motion to Strike Allegations of Serious Bodily Injury and Death from Count One (ECF No. 49)

- Motion for Bill of Particulars (ECF No. 50)

- Omnibus Motion for Discovery (ECF No. 51)

- Motion for Leave to Amend, Supplement, or File Additional Motions (ECF No. 52)

- Motion for Disclosure of the Government's Presentation and Legal Instruction to the Grand Jury Relating to the "Resulting in Death" Language of 18 U.S.C. Section 1347 (ECF No. 62)

The Government presented testimony from one of its designated experts, Philip Buescher, M.D., and Defendant presented testimony from Lone Thanning, M.D. Based upon the evidence and the arguments of counsel, the Court rules as follows:

**Motion to Exclude Purported Expert Opinions Regarding "But For" Causation as to the Four Charged Deaths**

This motion (ECF No. 44) is GRANTED IN PART AND DENIED IN PART. Defendant seeks to exclude the opinions of Dr. Buescher on cause of death of the patients identified in Counts 2 through 5, arguing they cannot be admitted under Federal Rule of Evidence 702 and the primary case interpreting it, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). According to *Daubert*, in performing its gatekeeping function, the Court is to admit expert testimony under Rule 702 only if it is both reliable and relevant. *Id.* at 589. Although the Court finds Dr. Buescher generally qualified to render an opinion as to cause of death and also finds generally reliable his methodology for determining cause of death, the Court finds irrelevant his opinion on cause of death as to Counts 4 and 5. Dr. Buescher has not definitively opined that the misreading of radiological images was the but-for cause of death for the patients in Counts 4 and 5; instead, he noted that any elderly patient with pneumonia (Count 4) is at some significant risk of dying regardless of the timeliness of medical intervention, and that an elderly patient severely afflicted with sepsis (Count 5) is mortally ill regardless of medical care or its timeliness. He acknowledged in his testimony his uncertainty as to cause of death in these two instances, and he spoke in terms of probabilities without resounding confidence as to his opinion that the misreadings were but-for causes of death. Thus, as to Counts 4 and 5, the Government may not present Dr. Buescher's opinions on cause of death where but-for causation is the standard because his opinions are less than definite. As for Count 2, the Court notes Dr. Buescher was unequivocal in his testimony that the patient would not have been cleared for surgery if the doctors had been aware of her congestive heart failure ("CHF") at the time of her surgery; Dr. Buescher also set out a logically connected sequence of events leading from the misreading to the surgery to the patient's death. That opinion may be

presented by the Government on Count 2. Dr. Buescher's opinion on Count 3 is a close call, but the Court finds the Government is entitled to present it to the jury. Dr. Buescher spoke of the cycle relating to CHF and treatment therefor, and he opined that the misreading of the image resulted in the patient's not receiving timely, ordinary, and appropriate treatment, thereby hastening her death.

The Court's ruling is specifically addressed to but-for causation of death, which seems clearly to be the focus of the Government's proof. However, a distinction must be made. The Government has failed to present any valid expert opinions as to but-for causation of serious bodily injury, which is charged in the alternative in Counts 2 through 5. As the Court explained during the hearing, the Government has consistently used an incorrect statement of the standard for serious bodily injury in this case. In the indictment on Counts 2 through 5, the grand jury charged the misreadings resulted in death or, alternatively, in "'serious bodily injury' to the patient, *as further defined as 'a substantial risk of death,'* at that time." (Superseding Indictment, ECF No. 29 (emphasis added).) Additionally, in the Government's disclosure to Defendant of Dr. Buescher's expert opinions, Dr. Buescher's opinion for each patient in Counts 2 through 5 was presented using the same phrase. (Sealed Ex. 1 to Motion, ECF No. 45.) In contrast, the statute under which these alternative charges are brought employs a more rigorous standard for serious bodily injury.

The grand jury in these four counts indicted Defendant for health care fraud under 18 U.S.C. § 1347(a) and charged him with violation of the statute such that he would be subject to a sentencing enhancement if convicted. Under § 1347(a), "[i]f the violation results in serious bodily injury (as defined in section 1365 of this title), such person shall be fined under this title or imprisoned not more than 20 years, or both . . . ." In § 1365(h)(3)(A), upon which the

Government relies, "the term 'serious bodily injury' means bodily injury which involves a substantial risk of death." The Government's statement of that standard conspicuously omits the phrase "bodily injury which involves" because, as it argued at the hearing, that phrase is unnecessary to be proven. Thus, the Government has charged, and seeks to introduce an expert opinion on, the following standard: The statute is violated if Defendant's conduct resulted in a substantial risk of death. The Government has apparently misunderstood (and, consequently, misstated) the statutory standard.

The Court is certain it is not misinterpreting the Government, given a number of corresponding statements in its opposition to Defendant's motion. Examples follow:

> However, in order to conclude that the violations *resulted in a "substantial risk of death,"* Dr. Buescher need not rule out all other possible causes of death. [ECF No. 60 at 7.]
>
> The causation question for the jury in this case will be whether the healthcare violations were the "but for" cause of death OR *a "substantial risk" of death*. [*Id.*]
>
> Put another way, a healthcare fraud violation could "result in" serious bodily injury, *further defined as "a substantial risk of death" in cases where the victim did not die but could die from the effects of the healthcare fraud violation*. [*Id.* at 8.]
>
> All of these misreads *exposed the victims to a substantial risk of death*. [*Id.* at 8.]
>
> Thus, the proffered expert testimony of Dr. Buescher as to whether the forged and inaccurate x-ray interpretation reports that the Defendant and employees at his direction provided to various health care facilities *exposed the victims to a "substantial risk of death"* and caused their deaths will assist the trier of fact in determining a fact in issue in this case. [*Id.* at 12-13.]
>
> Dr. Buescher's testimony is relevant because he will opine that the healthcare fraud violations charged in the Superseding Indictment were the "but for cause" *of serious bodily injury, defined as a substantial risk of death*, and death, and this was plainly stated in the Government's expert notice. [*Id.* at 14.]

The Government's misunderstanding and resultant misstatements of the appropriate standard are pervasive in its presentation to the Court.

In order to prove "serious bodily injury," the Government must first prove that there was a "bodily injury," as defined in 18 U.S.C. § 1365(h)(4) (*e.g.*, a cut, a burn, an illness, etc.) and then, in addition, prove that the bodily injury involved "a substantial risk of death." The Government in all of its papers and during the hearing skips over the statutory necessity of first proving an actual injury. Proving conduct that created a substantial risk of death, but without an injury, simply is not enough.

Statutes imposing criminal liability are to be construed narrowly, *United States v. Lanier*, 520 U.S. 259, 266-67 (1997), "'and [courts should] avoid interpretations not clearly warranted by the text,'" *United States v. Cone*, 714 F.3d 197, 205-06 (4th Cir. 2013) (quoting *WEC Carolina Energy Solutions LLC v. Miller*, 687 F.3d 199, 2014 (4th Cir. 2012)). The Court cannot merely ignore important, limiting language in the relevant statute. Such a "novel construction" as advocated by the Government fails to provide "fair warning" as to what constitutes conduct proscribed under the statute. *See Lanier*, 520 U.S. at 266-67. To the extent § 1365(h)(3)(A)'s definition of "serious bodily injury" may be considered ambiguous, then the more restrictive interpretation, not the one favored by the Government, must be adopted under the rule of lenity. *See id.* In consequence, the Government's choice to skip over elemental language from the statute renders the opinions of Dr. Buescher, which were founded upon the incorrect standard for serious bodily injury, inadmissible at trial for the alternative proposition that the alleged acts of health care fraud resulted in serious bodily injury.

Finally, Defendant's motion may be obliquely read as also seeking to exclude the opinions of Sanjeev Bhalla, M.D. Dr. Bhalla is a radiologist who provided to the Government his expert opinions on the proper interpretation of the x-rays at issue in Counts 2 through 5. Defendant has failed to raise a substantial question as to whether Dr. Bhalla is not qualified to

interpret these medical images or whether his methodology in interpreting them is unreliable. Therefore, no hearing pursuant to *Daubert* is required on Dr. Bhalla's testimony. *See Kumho Tire v. Carmichael*, 526 U.S. 137, 152 (1999) (trial court has latitude to determine whether special proceedings are needed to test reliability of expert evidence).

**Motion to Exclude Purported Expert Opinions**

This motion (ECF No. 46) is DENIED IN PART AND DENIED WITHOUT PREJUDICE IN PART. Defendant asks to exclude opinions of Dr. Bhalla that x-ray images at issue in Counts 9, 10, 11, and 12 are unreadable. Also, Defendant asks to exclude Dr. Buescher's opinions about the quality of the images in Counts 10 and 11 and about the treatment decisions that could have been made, or not, based on the quality of the images. As to the first part of this motion, Defendant has made no showing that Dr. Bhalla is unqualified, as a radiologist, to determine whether x-ray images are unreadable; thus, that portion of the motion is denied. The motion is also denied as to Dr. Buescher's opinions about the quality of the x-ray images in Counts 10 and 11; Dr. Buescher testified as to his extensive experience in reading and relying upon x-ray images, and the Court deems him qualified to testify regarding their readability. The third portion of the motion is denied without prejudice. At trial, if Defendant opens the door on cross-examination of coconspirator witnesses or other witnesses as to the treatment decisions that could have been made, or not, based on the quality of the images, then the Government may decide to present Dr. Buescher's opinions on this point in rebuttal. This issue will be addressed again, if necessary, during trial. But generally, the Court sees no relevancy of treatment decisions to the counts alleging pure fraud claims (as distinguished from counts alleging fraud resulting in death, *i.e.*, Counts 2 through 5).

**Motion to Bifurcate Trial**

This motion (ECF No. 48) is DENIED. The Court has determined that the Government may present its expert evidence bearing upon cause of death of the two patients in Counts 2 and 3. Further, the Court now rules that this particular evidence shall be presented in the Government's case in chief, which covers all counts. Unfair prejudice would potentially attach if after the jury heard proof of related deaths the Court subsequently determined that such proof was insufficient to allow Counts 2 and/or 3 to go to the jury for verdict. Such a scenario is, of course, speculative at this juncture, and bifurcation is not warranted with the case in its current posture.

**Motion to Strike Allegations of Serious Bodily Injury and Death from Count 1**

This motion (ECF No. 49) is GRANTED. Count 1 in the superseding indictment is the conspiracy count and is brought under 18 U.S.C. § 1349, which makes it a crime to conspire "to commit any offense under this chapter" and states that anyone who so conspires "shall be subject to the same penalties as those prescribed for the offense, *the commission of which <u>was the object of</u> the . . . conspiracy*." (Emphasis added.) Count 1 charges Defendant did knowingly and willfully conspire to "devise, execute and attempt to commit certain offenses . . . namely . . . to knowingly and willfully execute a scheme to defraud a health care benefit program . . . and that the violation <u>resulted in</u> serious bodily injury . . . and death." (Emphasis added.) The Government is clearly seeking, by means of this wording, to enhance the penalty for the conspiracy count if Defendant is convicted of it. The Government has not, however, alleged that Defendant *intended* to commit health care fraud resulting in death or serious bodily injury. To allege that the conspiracy and underlying offenses may have "resulted in" death is <u>not</u> to allege that death "was the object of" the conspiracy, and so the standard of section 1349 is not met by

7

this charging language. The Court concludes the Government's attempt to convert the sentencing enhancements of 18 U.S.C. § 1347, which do not rest upon intent, into statutory objects of the conspiracy fails based upon the same line of cases, *supra*, requiring strict construction of criminal statutes. Consequently, at trial, the language "and that the violation resulted in serious bodily injury, as defined in Title 18, Section 1365, and death, in violation of Title 18, United States Code, Section 1347" is stricken from Count 1, paragraph 28.a. It is surplusage that does not describe an element of the offense otherwise charged.[1]

**Motion for Bill of Particulars**

This motion (ECF No. 50) is DENIED WITHOUT PREJUDICE. However, by the close of business on August 10, 2015, the Government shall provide to Defendant a detailed breakout of each instance of fraudulent conduct to be presented in support of Count 1 in the Government's case in chief.

**Omnibus Motion for Discovery**

This motion (ECF No. 51) is DENIED. The Court's ruling is qualified, of course, by its prior orders regarding discovery. (*See* ECF Nos. 18, 36.) It is further qualified by requiring the Government to turn over investigative agents' rough notes ONLY TO THE EXTENT they conflict with the agents' reports, which have been provided to Defendant in discovery.

---

[1] The Court is well aware of the authority applying mandatory minimum penalties based upon foreseeable quantity in drug conspiracy cases prosecuted under 21 U.S.C. § 846. The Court distinguishes between drug and fraud cases in this important respect: In every drug case, SOME quantity of drugs is implicit or there is no offense; by contrast, in fraud cases, it is almost never true that a death is somehow involved. This case, if fully proven, is the rare exception. In interpreting the phrase "was the object of," the Court is confined to considering the core offense, *i.e.*, fraud, and what it normally implies, which does not include death in the same way that some quantity is always implied in a case of drug distribution. As charged, the "object of the conspiracy" was to steal, not to kill. Deaths may have been a consequence, but they were not the object.

**Motion for Leave to Amend, Supplement, or File Additional Motions**

This motion (ECF No. 52) is DENIED, except that the Court grants leave to Defendant to file ECF No. 62 beyond the deadline previously set for the filing of pretrial motions.

**Motion for Disclosure of the Government's Presentation and Legal Instruction to the Grand Jury Relating to the "Resulting in Death" Language of 18 U.S.C. Section 1347**

This motion (ECF No. 62) is DENIED.  Nevertheless, if Government counsel know the legal advice to the grand jury was arguably in conflict with the view expressed by the Court as to the proper definition of "serious bodily injury," then Government counsel should reflect on their duties under *Brady v. Maryland*, 373 U.S. 83 (1963), and the Rules of Professional Conduct to reveal that information to the Court *in camera*.

SO ORDERED.

DATED this 14th day of July, 2015.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge