**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Criminal No. JKB 14-0423** |
| **RAFAEL CHIKVASHVILI** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**GOVERNMENT'S MOTION**
**TO COMPEL DISCOVERY**

The United States of America, by its undersigned counsel, hereby files this motion to compel discovery pursuant to Federal Rules of Criminal Procedure 16(b) and 26.2. Specifically, the Government respectfully requests this Court order counsel for Rafael Chikvashvili produce forthwith any and all material in its possession from or relating to an investigation of Alpha business entities conducted by Ifrah Law firm and its members.

## BACKGROUND

Rafael Chikvashvili was charged in a Sealed Indictment on September 11, 2014. A Superseding Indictment was returned by the Grand Jury on April 9, 2015. Following a motions hearing on July 9-10, 2015, a Second Superseding Indictment was returned on July 23, 2015. This Court promulgated a scheduling order with revisions thereto that included discovery obligations of both parties. To the best of its ability, the Government provided discovery, including *Jencks* material in compliance with those orders, which were well in advance of the times when witness statements would normally be provided to opposing counsel.

From even before the searches executed on October 18, 2013, through September 2014, at the same time the Government was investigating prospective individual defendants, it was investigating potential charges against the Alpha business entities. Simultaneously, the Civil

Division of the United States Attorney's Office was engaged in the *Qui Tam* litigation that had been filed by the whistleblowers identified in defense counsel's opening statement.[1] Both A. Jeffrey Ifrah, Esquire and Rachel Hirsch, Esquire represented the Alpha entities for purposes of both the potential criminal and civil liability. In late July 2014, after Mr. Emeigh's guilty plea, Ifrah Law made a presentation to AUSA Mark Crooks, the thrust of which was he should not indict the business entities because, for the most part, they were no longer viable business operations, they lacked any assets, and charging individuals[2] would satisfy the Government's interests in deterrence.

Ifrah Law essentially repeated this presentation for AUSA Allen Loucks, who was representing the United States in the civil litigation on August 19, 2014. At that time, it was the Government's sense that the principal motivation on the part of Mr. Ifrah was to accelerate the disposition of the *Qui Tam* case so that he could then assist in the criminal representation of Rafael Chikvashvili.[3] Although Ifrah Law provided the Government with a PowerPoint® presentation during both of those meetings, no other reports, documents or notes were given to the Government. During both meetings, Ifrah counsel disclosed that they had "conducted [a] comprehensive internal investigation" however they did not disclose when, where, or how said investigation was conducted. After the meeting with Mr. Loucks, he and Ms. Hirsch exchanged emails about the subject of their meeting. Mr. Loucks wrote to her,

---

[1] *See* United States v. Alpha Diagnostic Services Inc., *et al*. Civil Case No. 1:13-cv-03859-RDB, in which case a Complaint for Forfeiture was filed by the United States on December 23, 2013.

[2] Mr. Ifrah and Ms. Hirsch acknowledged, in the wake of Mr. Emeigh's guilty plea, the likelihood that Rafael Chikvashvili would be charged with a similar offense(s).

[3] Although counsel for the Government do not know exactly why Mr. Ifrah did not join the defense team, we presume it might have been because the Government pointed out the conflict of interest presented by this representation of parties with potentially divergent interests.

> ". . . I haven't seen such a good case of False Claims Act liability against an entity and its owner in a long time. Timothy Emeigh has pled and he directly implicates Mr. Chikvashvili. You gave me a glimpse into Mr. Chikvashvili's character. That glimpse tends to confirm what I've been told by other witnesses: that he was fully aware of everything that went on at Alpha Diagnostics and directed Emeigh . . . ."

In response, Ms. Hirsch wrote:

> Also, I want to clarify something you mention in your email below. During our conversation we discussed Tim Emeigh's plea agreement. I mentioned to you that it is our position that Tim was a rogue employee and was responsible for the alleged misconduct . . . We have not been privy to what other witnesses have told you about Mr. Chikvashvili, but our own *internal investigation (which we discussed briefly)* did not reveal that Mr. Chikvashvili knew of the alleged wrongdoing by Mr. Emeigh or in any way participated in it. (*emphasis added*).

Ultimately, AUSA Crooks declined to prosecute the business entities; the civil litigation remains unresolved.

On or about January 15, 2016, counsel for the Defendant provided the Government its first iteration of a Witness List. Rachel Hirsch was identified as a prospective defense witness. Sometime between January 18, 2016, and January 22, 2016, AUSA Leo Wise had a brief telephone conversation with Ms. Hirsch to inquire about her prospective testimony. She advised that while she had not [as of that date, recently] spoken with Ms. Kelly [sic], she assumed her testimony would relate to the Ifrah investigation. On January 22, 2016, Mr. Wise spoke with Ms. Cronin about the prospective defense witnesses, including Ms. Hirsch. Government counsel believed, from this conversation, that Ms. Hirsch was a potential prior inconsistent statement impeachment witness. On January 29, 2016, government counsel requested of defense counsel copies of the Ifrah investigation report, any statements obtained by Ifrah Law during the investigation as well as any other notes or documents covered by Rule 16. Counsel for the defendant declined to produce any material from the Ifrah Law investigation, including witness statements. As the Court knows, on or about February 3, 2016, counsel for Mr. Chikvashvili

advised that he would not waive, on behalf of the Alpha entities, any attorney-client privilege respecting those materials.

**ARGUMENT**

Attorney-Client Privilege

First, the Unites States contends that the Alpha entities, to which the attorney-client privilege extends, have impliedly waived that privilege by virtue of the previous disclosure to AUSAs Crooks and Loucks. Not only did their presentations rely heavily on the investigation to support the contention that none of the Alpha entities should be indicted, but additionally, Ms. Hirsch used the internal investigation to buttress her vigorous defense of Mr. Chikvashvili, even though he was not her client. *See In re Martin Marietta Corp*., 856 F.2d 619, 622 (4th Cir. 1988). "Any voluntary disclosure by the client to a third party waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter." *United States v. Jones,* 696 F.2d 1069 (4th Cir. 1982) (quoting *In re Sealed Case*, 676 F.2d 793, 808-09 (D.C. Cir. 1982). The *Jones* Court went on to note that the *Sealed* Court said that when a party reveals part of a privileged communication to gain an advantage in litigation, the party waives the attorney-client privilege as to all other communications relating to the same subject matter. Selective disclosure for tactical purposes waives the privilege. *Jones*, 696 F.2d at 1072.

"The Fourth Circuit has not embraced the concept of limited waiver of the attorney-client privilege. It has held that if a client communicates information to his attorney with the understanding that the information will be revealed to others, that information as well as 'the details underlying the data which was to be published' will not enjoy the privilege." *In re Martin Marietta*, 856 F.2d at 623 (quoting *United States v. (Under Seal)*, 748 F.2d 871, 875 (4th Cir.

1984)(internal quotations omitted)). In *Martin Marietta*, the company claiming the privilege had previously disclosed to the United States Government a position paper describing why the company should not face indictment. The Fourth Circuit held that the position paper *as well as the underlying details* were no longer within the attorney-client privilege and were subject to disclosure under a subpoena. *Id*. To the extent the Ifrah firm, who represented the Alpha entities, not Rafael Chikvashvili, disclosed the results of the supposed comprehensive internal investigation, this would – as the disclosure to AUSAs Crooks and Loucks – constitute disclosure to a third-party.

Reciprocal Discovery

Fed. R. Crim. P. 16 spells out discovery obligations, including those imposed on the defendant. The Rule states in pertinent part:

> (b) Defendant's Disclosure.
> (1) *Information Subject to Disclosure.*
> (A) *Documents and Objects*. If a defendant requests disclosure under Rule 16(a)(1)(E) and the government complies, then the defendant must permit the government, upon request, to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items if:
> (i) the item is within the defendant's possession, custody, or control; and
> (ii) the defendant intends to use the item in the defendant's case-in-chief at trial.
> (B) *Reports of Examinations and Tests*. If a defendant requests disclosure under Rule Rule 16(a)(1)(F) and the government complies, the defendant must permit the government, upon request, to inspect and to copy or photograph the results or reports of any physical or mental examination and of any scientific test or experiment if:
> (i) the item is within the defendant's possession, custody, or control; and
> (ii) the defendant intends to use the item in the defendant's case-in-chief at trial, or intends to call the witness who prepared the report and the report relates to the witness's testimony.

* * * * *

(2) *Information Not Subject to Disclosure*. Except for scientific or medical reports, Rule 16(b)(1) does not authorize discovery or inspection of:

(A) reports, memoranda, or other documents made by the defendant, or the defendant's attorney or agent, during the case's investigation or defense; or

(B) a statement made to the defendant, or the defendant's attorney or agent, by:

(i) the defendant;
(ii) a government or defense witness; or
(iii) a prospective government or defense witness.

Fed. R. Crim. P. 26.2 and 18 U.S.C. § 3500 address the production of witness statements. The former states in pertinent part:

(a) Motion to Produce. After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, must order an attorney for the government or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony.
(b) Producing the Entire Statement. If the entire statement relates to the subject matter of the witness's testimony, the court must order that the statement be delivered to the moving party.
(c) Producing a Redacted Statement. If the party who called the witness claims that the statement contains information that is privileged or does not relate to the subject matter of the witness's testimony, the court must inspect the statement in camera. After excising any privileged or unrelated portions, the court must order delivery of the redacted statement to the moving party. If the defendant objects to an excision, the court must preserve the entire statement with the excised portion indicated, under seal, as part of the record.
(d) Recess to Examine a Statement. The court may recess the proceedings to allow time for a party to examine the statement and prepare for its use.
(e) Sanction for Failure to Produce or Deliver a Statement. If the party who called the witness disobeys an order to produce or deliver a statement, the court must strike the witness’s testimony from the record. If an attorney for the government disobeys the order, the court must declare a mistrial if justice so requires.
(f) “Statement” Defined. As used in this rule, a witness’s “statement” means:

(1) a written statement that the witness makes and signs, or otherwise adopts or approves;

(2) a substantially verbatim, contemporaneously recorded recital of the witness’s oral statement that is contained in any recording or any transcription of a recording; or

(3) the witness’s statement to a grand jury, however taken or recorded, or a transcription of such a statement.

(g) Scope. This rule applies at trial, . . . .

As this Court is well aware, counsel for both parties have been admonished to make complete and early discovery of materials subject to discovery. In light of the inclusion of Ms. Hirsch on his prospective witness list, and particularly because of reference to this investigation during Mr. Biran's opening statement for Mr. Chikvashvili, the Government contends that the documents it seeks fall squarely within the ambit of Rules 16(b) and 26.2. In the same way that an agent's report of his or her interview of a witness would be discoverable if the agent was testifying about that subject,[4] Ifrah Law's reports, memoranda and documents respecting the investigation are statements of this witness, and should be disclosed. Waiting until Ms. Hirsch testifies and then compelling the disclosure of the materials will unnecessarily prolong the trial. Moreover, having disclosed this information and tack during his opening statement, the Defendant can hardly claim that it would unfairly reveal defense strategy.

Accordingly, the United States requests this Court order counsel for Rafael Chikvashvili forthwith disclose any and all reports, documents, statements, notes or other material in its possession relating to the internal investigation of Alpha business entities performed by the Ifrah Law firm and its partners and associates.

Respectfully submitted,

ROD J. ROSENSTEIN
United States Attorney

/ss/

By: ________________________

Leo J. Wise
P. Michael Cunningham
Assistant United States Attorneys

---

[4] The United States routinely, and in this case, provides early disclosure of agents' reports of interviews, even if the agent is not intended to be a witness in the government's case-in-chief, and even though the agents' accounts of the witnesses' statements are not themselves the witnesses' statements.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was electronically filed with notice to counsel of record:

/s/
___________________________
P. Michael Cunningham
Assistant United States Attorney